IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:18CR46-1 |
| | ) | |
| AARON DARIUS HOLTZCLAW | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

As part of an investigation into a fatal shooting, law enforcement sought and received a search warrant from a Magistrate in Rowan County authorizing a search of 1508 Lakewood Drive, Salisbury, North Carolina, on December 4, 2016. (Doc. 14-1.) The warrant was issued on the application and affidavit of a detective with the Salisbury Police Department. (Id.) Defendant Aaron Darius Holtzclaw ("Defendant") challenges the search warrant on the basis that the warrant fails to establish probable cause for the search. (Doc. 14.) Defendant's objection to the warrant is broad, however, the primary focus of the objection is that the affidavit supporting the warrant would not "lead a person of reasonable caution to conclude that evidence of the shooting would be found inside 1508 Lakewood Drive." (Id. at 5.) For the reasons stated herein, this court concludes that the warrant in question lacked probable cause to search 1508

Lakewood Drive and requests supplemental briefing from the parties on the good faith exception to the warrant requirement.

I.   **LEGAL FRAMEWORK**

   A.   **Probable Cause**

"[P]robable cause to search . . . exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found[.]" Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted). "Probable cause to search exists when . . . the totality of the circumstances[] are sufficient to lead a prudent person to believe that the items sought . . . will be present at the time and place of the search." United States v. Suarez, 906 F.2d 977, 984 (4th Cir. 1990) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). "It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." Franks v. Delaware, 438 U.S. 154, 165 (1978) (citations omitted). "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

The parties dispute which facts contained in the warrant are relevant to the probable cause analysis. (See Def.'s Mot. to Suppress (Doc. 14) at 5; Government's Resp. to Def.'s Mot. to Suppress ("Government's Resp.") (Doc. 17) at 6-8.) Following review of the warrant, it appears to this court that resolution of the challenge to probable cause in this case requires a determination as to what constitutes relevant facts as opposed to unsupported conclusory statements. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Illinois v. Gates, 462 U.S. 213, 239 (1983). "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." Nathanson v. United States, 290 U.S. 41, 47 (1933).

B. **Good-Faith Exception**

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court established the good-faith exception to the exclusionary rule. This exception comes into play when officers act in reasonable reliance on a search warrant that is later found to be unsupported by probable cause. Id.

> The Court identified four circumstances in which the good-faith exception would not apply: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York;" (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid."

United States v. DeQuasie, 373 F.3d 509, 519 (4th Cir. 2004) (citations and footnote omitted). In considering whether an officer relied on a warrant in good faith, "a court may properly look beyond the facts stated in the affidavit and consider uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate." United States v. McKenzie-Gude, 671 F.3d 452, 459 (4th Cir. 2011). In any of the four above-listed circumstances, the good-faith exception does not apply, and any evidence gathered pursuant to the deficient warrant must be excluded from trial. United States v. Andrews, 577 F.3d 231, 236 (4th Cir. 2009).

## II. **FACTS CONTAINED IN THE AFFIDAVIT**

The particular facts and circumstances described in the affidavit attached to the application for the search warrant begin with a statement that on December 4, 2016, a shooting

- 4 -

occurred at the Firewater Restaurant and Lounge; one person was killed. (Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 6-7.)[1] According to the officer, multiple witnesses identified Defendant as present during the shooting. (Id. at 7.) At some time following the shooting, the affidavit alleges that Defendant was located by law enforcement officers at his residence at 1508 Lakewood Drive in Salisbury. (Id.) While at the residence with the officers, Defendant "stated that he was at Firewater at the time of the shooting." (Id.) Defendant also stated he was driving a black jeep rental car which "was shot into during the shooting at Firewater." (Id.) According to the affidavit, "Detectives verified this and observed a bullet hole in the drivers [sic] side of the windshield . . . ." (Id.) While still at the residence, Defendant further stated that "people were making threats to him on social media" but the affidavit does not describe the nature of the threats or what may have been said as a threat. (Id.) Defendant said the phone he uses on social media was broken and then said he lost it. (Id. at 7-8.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

## III. ANALYSIS

### A. Probable Cause

Although this court finds the facts described above as the relevant historical facts contained in the affidavit attached to the application for the search warrant, the Government argues additional statements contained in the affidavit support a finding of probable cause. This court disagrees, finding instead that these additional statements are conclusions without sufficient factual support in the affidavit.

First, the Government argues that "the information provided by the unnamed witnesses, that the defendant was a suspect in the shooting, was corroborated by investigators" and that this "is a crucial fact." (Government's Resp. (Doc. 17) at 7.) This court disagrees that this statement is a fact and instead finds that statement is an unsupported conclusion. As to the statement in question, the affidavit states in full that "Salisbury Police obtained information from multiple witnesses that [Defendant] was present during the shooting and is a suspect of the shooting." (Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 7.) No facts are provided to allow a reviewing magistrate to determine what facts support a conclusion that Defendant is a suspect. Nor does the affidavit state that the affiant corroborated these unidentified witness statements or that these witnesses were known to be reliable. Therefore, even assuming,

as the Government argues, that information was provided by "multiple witnesses," (Government's Resp. (Doc. 17 at 7), this statement does not add any particular fact or circumstance allowing the magistrate to determine probable cause through an independent evaluation of the facts. "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances . . . . Mere affirmance of belief or suspicion is not enough." Nathanson, 290 U.S. at 47.

Second, the Government argues that Defendant's statements "corroborate the fact that the defendant was a suspect in the shooting[.]" (Government's Resp. (Doc. 17) at 7.) The Government's argument constitutes a conclusion without supporting facts. Certainly Defendant's statements corroborated his presence at the time of the shooting, as does the fact that detectives verified that someone shot into Defendant's car. However, the fact that Defendant's car was shot into does not provide any reason to believe Defendant possessed a firearm or was himself shooting at someone. The facts described do not inescapably or even reasonably lead to a conclusion that Defendant shot back, was involved in the shooting, or was even armed.

Finally, the Government argues that Defendant told officers "he was receiving threats as a result of the belief that he was

the perpetrator." (Id.) However, the warrant only recites that Defendant "stated that people were making threats to him on social media," (Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 7), and does not contain a description of any threats. The record does not reflect that the magistrate was provided any information as to the nature of any threats, and more pointedly, that the magistrate knew someone accused Defendant of being the perpetrator. This court therefore declines to find that an allegation of Defendant's receipt of "threats" adds to the probable cause analysis.

Finally, while not a fatal defect to the probable cause analysis, the officer states in four separate places that 1508 Lakewood Drive is Defendant's residence, but provides no factual basis to explain how the officer acquired the information that this was Defendant's residence. The Fourth Circuit has stated, albeit in an unpublished opinion:

> [Defendant's] primary contention, however, is that the affidavit provides no information indicating that Apt. C, 719 N. Carrollton St. ("the apartment") is the place where he stays. Our precedent suggests that such evidence is necessary to support a determination that probable cause exists to search that place. See Lalor, 996 F.2d at 1582 ("As for the evidence that Lalor resided at 1572 Waverly Way, no staleness problem exists. Information from one informant and police investigation indicated that Lalor lived at 1572 Waverly Way in December 1989 and January 1990. When stopped by a police officer on January 6, 1990, three weeks prior to the search, Lalor gave his address as 1572 Waverly Way . . . ."). Detective Jones testified at the motions hearing that

he learned [defendant] lived in the apartment from interviewing Wright and a resident of the apartment building, Tanya Harris. He did not, however, indicate that he had presented this information to the magistrate.

United States v. Harris, 215 F. App'x 262, 270-71 (4th Cir. 2007) (ultimately concluding that the affidavit failed to establish probable cause but that the good-faith exception applied); cf. United States v. Williams, 548 F.3d 311, 321 (4th Cir. 2008). The allegation that 1508 Lakewood was Defendant's residence is troubling here because, as the parties suggested during the hearing on this motion, that address was Defendant's mother's residence and it did not appear clear how often Defendant might have stayed at the residence. Furthermore, during an interview prior to issuance of the search warrant, Defendant was asked about his residence and stated that he did not live at the Lakewood address.[2] (Ex. and Witness List (Doc.

---

[2] During the interview of Sherika Pate, she made statements that might be construed to suggest that Defendant lived at the Lakewood address. However, from her statements, it is unclear whether the residence is Defendant's or his mother's, and under what circumstances Defendant might have resided at the Lakewood address. Because Detective D.M. Barkalow was not in the interview room when Defendant made the statements about the Lakewood residence and it is unclear whether Detective Barkalow was in the interview room when Pate made the above-referenced statements, it is not clear what information Detective Barkalow might have used to allege Defendant's residence in the affidavit.

20) Def.'s Ex. 2, Interview of Holtzclaw.)[3] While 1508 Lakewood may very well have been Defendant's residence, it is not clear what facts were the basis of that allegation by law enforcement.

After consideration of the totality of relevant historical facts and circumstances as contained in the warrant, this court finds that the issuing magistrate did not have a factual basis upon which to conclude that probable cause existed to search 1508 Lakewood Drive. It appears to this court that the relevant facts relating to Defendant's possible participation in the shooting or that evidence would be found at 1508 Lakewood Drive include the fact that Defendant was present at the time of the shooting and that a shot was fired into the driver's side windshield of his vehicle. Those facts appear to support a finding of probable cause to search Defendant's vehicle as a place likely to produce relevant evidence, that is, evidence of a bullet or a bullet. The facts may have further provided a reasonable suspicion to believe Defendant had some greater involvement with the shooting than mere presence. However, the

---

[3] While the audio recording of Defendant's interview is not listed on the Exhibit and Witness list maintained by the clerk, defense counsel indicated at the hearing that she was admitting recordings of both Defendant's interview and Pate's interview. An excerpt of Defendant's interview was played at the hearing. Recordings of both interviews were inadvertently marked as Defendant's Exhibit 1, and the Defendant's interview is now cited by this court as Defendant's Exhibit 2 to resolve any confusion in the record.

facts fall short of providing probable cause to search Defendant's alleged residence at 1508 Lakewood Drive for "[c]ell phones, other electronic media devices," "[a]ny weapons, to include handguns," and "[a]ny clothing that contains blood for the purpose of DNA." (Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 4.) Not only is probable cause to believe Defendant is somehow a suspect in the shooting absent, but the affidavit also fails to provide a nexus between the items to be seized and the property to be searched. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978) (footnote omitted); see also id. at n.6; Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967).

**B. Good-Faith Exception**

Defendant contends the affidavit in support of probable cause is "bare bones" and that it was objectively unreasonable for the officers to rely on the issuance of a warrant. (Mot. to Suppress (Doc. 14) at 6.) In terms of a "bare bones" affidavit, this court finds the magistrate's reliance upon three unsupported, conclusory allegations – that Defendant was a "suspect," that Defendant received threats of an unspecified

- 11 -

nature, and that 1508 Lakewood Drive was Defendant's residence – troubling.

Nevertheless, this court finds the parties' briefing on the good-faith exception not entirely helpful, in part because of the parties' dispute over relevant facts. The parties evaluated the good-faith exception in light of their proposed factual findings, both of which are different from those outlined above. In view of these findings, this court requests that the parties, should they choose to do so, submit a supplemental brief addressing the following questions:

    1.    As a preliminary matter, it would be helpful to this court for Defendant to clearly identify which of the four circumstances in which the good-faith exception does not apply, see DeQuasie, 373 F.3d at 519, he contends is applicable in this case.

    2.    With respect to the first circumstance in which the good-faith exception does not apply – where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth[,]" DeQuasie, 373 F.3d at 519 – the parties are advised of the following:

        (a)    This court does not presently find compelling Defendant's argument regarding conflicting information about the

source of threats made to Defendant, as no argument has been made to suggest that the omission of such conflicting facts misled the magistrate. Compare United States v. Colkley, 899 F.2d 297, 300-01 (4th Cir. 1990) ("An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. However, every decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly. If, as the district court held, this type of 'intentional' omission is all that Franks requires, the Franks intent prerequisite would be satisfied in almost every case. . . . Franks protects against omissions that are designed to mislead*,* or that are made in reckless disregard of whether they would mislead*,* the magistrate."), and United States v. Clenney, 631 F.3d 658, 664-65 (4th Cir. 2011), with United States v. Lull, 824 F.3d 109, 117 (4th Cir. 2016) ("[T]he omitted information was clearly relevant to the magistrate's probable cause determination. One way of establishing reckless disregard is by proffering 'evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause."'").

        (b)  To the extent Defendant challenges any other content in the affidavit as recklessly false and misleading, such arguments should be explained in detail with ample citation to pertinent legal authorities. Further, if Defendant should now

choose to contest the allegation in the affidavit that 1508 Lakewood Drive was Defendant's residence, he should address this argument specifically and further explain, in light of this, why he has standing to challenge the search of the residence.

       3.   Should Defendant choose to make arguments under the third circumstance in which the good-faith exception does not apply – when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]" DeQuasie, 373 F.3d at 519 – it would be helpful for the parties to address the following:

       (a)   On the present record, no evidence is presented to suggest the officer possessed additional information or offered additional information to the magistrate. Even if the court has found that an allegation that Defendant is a suspect constitutes an unsupported conclusion, how should that affect the good-faith exception analysis? It would be helpful to the court if the parties began by explaining whether this case is more analogous to United States v. Wilhelm, 80 F.3d 116, 123 (4th Cir. 1996) (finding the good-faith exception inapplicable where it was unreasonable to reply on an unknown informant without more information), or to United States v. Bynum, 293 F.3d 192, 197-99 (4th Cir. 2002) (finding that the good-faith exception applied where, although magistrate was not told of

underlying information, officer swore that he was relying upon a known and proven confidential source). Relatedly, would it be reasonable for an officer to conclude that the magistrate understood the use of "suspect" and found it compelling?

        (b)   Another court in this district has commented that an affiant's motivation to search a residence "combined with a vague claim by an untested informant . . . and unsupported claims of reliability, casts doubt on the officer's good faith in executing the warrant." See United States v. Powers, 1 F. Supp. 3d 470, 478 (M.D.N.C. 2014) (Eagles, J.) (citing Wilhelm, 80 F.3d at 123 ("While perhaps not undertaken with deliberate bad faith, [affiant's] use of phrases such as 'concerned citizen,' 'mature' and 'truthful demeanor' strike this court as attempts to endue the affidavit with the appearance of genuine substance; this tactic suggests that [affiant] herself knew that probable cause was lacking, and thus that reliance on the resulting warrant was not reasonable.")) In this case, the facts may be different and perhaps not as compelling, but the use of the word "suspect" and attribution of that to "multiple" unidentified witnesses appears to similarly endue the affidavit with the appearance of genuine substance. Because an officer's subjective belief of what the affidavit should contain is not dispositive, see United States v. Edwards, 798 F.2d 686, 692 (4th Cir. 1986), it would be helpful to this

court for the parties to address why an objectively reasonable officer would or would not believe that evidence of criminal activity would be found at the Lakewood residence.

(c) Relatedly, it would be helpful for the parties to address the "nexus" between the place to be searched and the items to be seized as it relates to the good-faith analysis. See, e.g., United States v. Williams, 548 F.3d 311 (4th Cir. 2008); United States v. Lalor, 996 F.2d 1578 (4th Cir. 1993).

(d) In spite of the court's stated concerns above as to the absence of any fact to support a finding that Defendant's residence was 1508 Lakewood Drive, is it objectively reasonable to assume that where a person and his or her car are located in the early morning is their residence for purposes of probable cause?

## IV. **CONCLUSION**

This court reserves making any further findings until after the supplemental briefing period is complete.

**IT IS HEREBY ORDERED** that, to the extent the parties wish to file supplemental briefs addressing the good-faith exception, such briefs shall be filed within seven days of entry of this order. No responsive briefing is permitted at this time.

This the 4th day of June, 2018.

_____
United States District Judge