IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:18CR46-1 |
| | ) | |
| AARON DARIUS HOLTZCLAW | ) | |


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

As part of an investigation into a fatal shooting, law
enforcement sought and received a search warrant from a
Magistrate in Rowan County authorizing a search of 1508 Lakewood
Drive, Salisbury, North Carolina, on December 4, 2016. (Def.'s
Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1).) The
warrant was issued on the application and affidavit of an
officer with the Salisbury Police Department. (Id.) Defendant
Aaron Darius Holtzclaw ("Defendant") challenged the search
warrant on the basis that it fails to establish probable cause
for the search. This court previously found that the facts
contained in the affidavit underlying the search warrant
application "fall short of providing probable cause to search
Defendant's alleged residence at 1508 Lakewood Drive for '[c]ell
phones, other electronic media devices,' '[a]ny weapons, to
include handguns,' and '[a]ny clothing that contains blood for

the purpose of DNA.'" (Mem. Op. & Order (Doc. 21) at 11 (quoting

Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 4).) This

court not only found probable cause absent, but also found that

the affidavit failed to provide a nexus between the items to be

seized and the property to be searched. (<u>Id.</u>)

The Government contends:

> Even if this Court were to determine that
> probable cause did not exist to support the issuance
> of the search warrant, that finding would be
> unavailing to the defendant. <u>Leon</u> directs that a court
> should not suppress the fruits of a search . . .
> unless "a reasonably well-trained officer would have
> known the search was illegal despite the magistrate's
> authorization."

(Government's Resp. to Def.'s Mot. to Suppress ("Government's

Resp.") (Doc. 17) at 9 (citing <u>United States v. Leon</u>, 468 U.S.

897, 922 & n.23 (1984)). In response, Defendant argues that

"[t]he affidavit supporting the search warrant cannot be saved

by the <u>Leon</u> good faith exception." (Def. Holtzclaw's Suppl. Br.

("Def.'s Suppl. Br.") (Doc. 24) at 1.)

I.  <u>**LEGAL FRAMEWORK**</u>

In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the Supreme

Court established the good-faith exception to the exclusionary

rule.

> The Court identified four circumstances in which
> the good-faith exception would not apply: (1) "if the
> magistrate or judge in issuing a warrant was misled by
> information in an affidavit that the affiant knew was

false or would have known was false except for his
reckless disregard of the truth;" (2) if "the issuing
magistrate wholly abandoned his judicial role in the
manner condemned in Lo-Ji Sales, Inc. v. New York";
(3) if the affidavit supporting the warrant is "so
lacking in indicia of probable cause as to render
official belief in its existence entirely
unreasonable;" and (4) if under the circumstances of
the case the warrant is "so facially deficient — i.e.,
in failing to particularize the place to be searched
or the things to be seized — that the executing
officers cannot reasonably presume it to be valid."

United States v. DeQuasie, 373 F.3d 509, 519 (4th Cir. 2004)

(citations and footnote omitted). Under any of those

circumstances, the good-faith exception does not apply, and any

evidence gathered pursuant to the deficient warrant must be

excluded from trial. United States v. Andrews, 577 F.3d 231, 236

(4th Cir. 2009).

    In making a determination as to the good-faith exception

under Leon, it is appropriate to look outside an affidavit in

determining whether the officer's reliance was objectively

reasonable because Leon notes that the good-faith exception is

determined "in light of all the circumstances." United States v.

McKenzie-Gude, 671 F.3d 452, 459 (4th Cir. 2011); cf. United

States v. Bynum, 293 F.3d 192, 197-98 (4th Cir. 2002)

(information not presented in affidavit but known to officer

about informant's credibility rendered reliance on warrant

reasonable).

The burden of proof is on the Government to establish objectively reasonable reliance under <u>Leon</u>. <u>See</u> <u>United States v. Voustianiouk</u>, 685 F.3d 206, 215 (2d Cir. 2012); <u>United States v. Corral-Corral</u>, 899 F.2d 927, 932 (10th Cir. 1990); <u>United States v. Michaelian,</u> 803 F.2d 1042, 1048 (9th Cir. 1986); <u>United States v. Maggitt</u>, 778 F.2d 1029, 1034 (5th Cir. 1985); <u>see also</u> <u>Leon</u>, 468 U.S. at 924 ("When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.").

"In the <u>Leon</u> context, we begin with the assumption that there was not a substantial basis for finding probable cause; the only question is whether reliance on a warrant that lacks such a 'substantial basis' was nevertheless reasonable." <u>Andrews</u>, 577 F.3d at 236 n.1; <u>see also</u> <u>United States v. Doyle</u>, 650 F.3d 460, 470 (4th Cir. 2011).

I.  **<u>ANALYSIS</u>**

The affidavit in this case establishes that a shooting occurred at the Firewater Restaurant and Lounge on December 4, 2016, and one victim was killed. (Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 6-7.) Thereafter, the affidavit provides in relevant part:

During the investigation Salisbury Police obtained information from multiple witnesses that Aaron Darius Holtzclaw was present during the shooting and is a suspect of the shooting.

Salsibury [sic] Police Detectives located Aaron Darius Holtzclaw at his residence, 1508 Lakewood Dr. Salisbury NC. Aaron Darius Holtzclaw agreed to go with Salisbury Police Detectives to the Salisbury Police Department to be interviewed, he was informed he was not under arrest and he would be coming under his own free will. Holtzclaw said he understood and agreed to go with the Detectives.

While at Holtzclaw's residence, 1508 Lakewood Dr., Holtzclaw stated that he was at Firewater at the time of the shooting and that he was driving a black 2016 Jeep Patriot (NC# DMT9138), which is a rental car from Enterprise. Holtzclaw stated that the black jeep was shot into during the shooting at Firewater. Detectives verified this and observed a bullet hole in the drivers side of the windshield of the jeep in question. This jeep was secured by Salisbury Police and towed to the Salisbury Police Department.

While still at Holtzclaw's residence, 1508 Lakewood Dr., Holtzclaw stated that people were making threats to him on social media. When Salisbury Police Detectives asked him where his phone was Holtzclaw stated that he had two phones. When Detectives asked him where the phones were Holtzclaw said the phone he uses on social media was broke he then retracted this statement and said he lost it on the west side he then stated it might be at Firewater. Holtzclaw did have one phone on his person but would not release it to the detectives.

Holtzclaw then left willingly with Salisbury Police Detectives to be driven to the Salisbury Police Department to give a statement.

Based on these facts, it is believed there is probable cause to believe more evidence is on Aaron Darius Holtzclaw's media devices and within Holtzclaw['] apartment . . . .

(Id. at 7-8.)

Defendant contends under Leon that "[t]he affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" (Def.'s Suppl. Br. (Doc. 24) at 1.) The Government contends the affidavit in this case is "far superior to the affidavit upheld by the Fourth Circuit in [United States v. Bynum, 293 F.3d 192 (4th Cir. 2002)]" as the information is less than twenty-four hours old and was corroborated. (Government's Resp. (Doc. 17) at 10-11.) The Government specifically argues that a reasonable officer would rely upon this warrant because the information in the affidavit included:

> (1) the fact that multiple sources identified the defendant as a suspect; (2) the defendant admitted being at the scene at the time of the homicide; (3) the defendant admitted that he was driving a vehicle that was discovered to contain a bullet hole; (4) the defendant admitted receiving threats because others believed he killed "Stacks"; and (5) the defendant gave inconsistent statements regarding the location of his second phone.

(Id. at 11.) In assessing whether the good-faith exception applies in this case, this court considers each piece of information identified above.

## A.  "Suspect"

The statement contained in the affidavit that Defendant "is a suspect[1] of the shooting," (Mot. to Suppress, Ex. A, Search

---

[1] The full sentence ("Salisbury Police obtained information from multiple witnesses that Aaron Darius Holtzclaw was present during the shooting and is a suspect of the shooting") suggests the "witnesses" identified Defendant as a "suspect." (Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 7.) This court finds it odd that a "witness" would make a statement that someone is a "suspect" as opposed to providing actual facts to demonstrate any involvement by the suspected individual in the shooting. Correspondingly, a law enforcement officer would identify an individual as a "suspect" based upon information learned during an investigation. Perhaps the affidavit is simply inartfully drawn, but it appears to this court that Defendant was a "suspect" in the opinion of investigators, and the information provided by any "witnesses" as described in the affidavit only confirmed that Defendant was present at Firewater during the shooting.
    The Government appears to interpret this language differently, as it argues that the information from witnesses was "that the defendant was a suspect[.]" (Government's Resp. (Doc. 17) at 7.) This type of uncertainty illustrates the problem with statements consisting of solely conclusory suspicion or belief as opposed to the underlying substantive information. Regardless, under either interpretation of the language, this court reaches the same result.
    Another court in this district has commented that an affiant's motivation to search a residence "combined with a vague claim by an untested informant . . . and unsupported claims of reliability, casts doubt on the officer's good faith in executing the warrant." United States v. Powers, 1 F. Supp. 3d 470, 478 (M.D.N.C. 2014) (citing United States v. Wilhelm, 80 F.3d 116, 123 (4th Cir. 1996) ("While perhaps not undertaken with deliberate bad faith, [affiant's] use of phrases such as 'concerned citizen,' 'mature' and 'truthful demeanor' strike this court as attempts to endue the affidavit with the appearance of genuine substance; this tactic suggests that [affiant] herself knew that probable cause was lacking, and thus that reliance on the resulting warrant was not reasonable.")).

Warrant (Doc. 14-1) at 7), is a bare conclusion and contrary to longstanding precedent that an affidavit must contain facts, not belief or suspicion. "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." Nathanson v. United States, 290 U.S. 41, 47 (1933); accord United States v. Harris, 403 U.S. 573, 578 (1971). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Illinois v. Gates, 462 U.S. 213, 239 (1983). As Justice Jackson stated in Johnson v. United States:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

333 U.S. 10, 13-14 (1948) (footnote omitted). An objective law enforcement officer could not reasonably believe that the use of the term "suspect" provides any fact or circumstance which would allow the magistrate to make an independent determination of probable cause. Instead, the statement that Defendant is a

"suspect" simply seeks ratification of the conclusion of the
officer or that of the unknown witness.

### B. **"Multiple Witnesses"**

Second, the statement that Salisbury Police obtained
information from "multiple witnesses" is similarly vague and
conclusory. Even assuming that the term "witness" is suggestive
of the individual witness's presence at the scene of the
shooting, there is no information provided as to what the
"witnesses" might have seen. It is unknown from the affidavit
whether the "witnesses" saw the actual shooting, the aftermath
of the shooting, or something else entirely. Furthermore, there
is no evidence to suggest anything as to the credibility of the
witnesses. No fact or other evidence was presented to the
magistrate or this court as to whether they were innocent
citizens, victims, cooperating informants, or participants in
the criminal activity. No fact or other evidence was presented
to the magistrate or this court as to whether the witnesses
engaged in a face-to-face encounter by law enforcement or were
anonymous. If the "witnesses" are victims, then "[i]t is surely
reasonable for a police officer to base his belief in probable
cause on a victim's reliable identification of his attacker."
Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991)
(citation omitted). "[I]f an unquestionably honest citizen comes

forward with a report of criminal activity – which if fabricated
would subject him to criminal liability – . . . rigorous
scrutiny of the basis of knowledge [is] unnecessary." <u>Gates</u>, 462
U.S. at 233-34; <u>see also</u> <u>DeQuasie</u>, 373 F.3d at 524-25. However,
in other circumstances, a warrant must provide some basis upon
which a witness's veracity and basis of knowledge may be
determined. A judicial officer's assessment of probable cause
based upon the totality of the circumstances must include a
review of the "'veracity' and 'basis of knowledge' of persons
supplying hearsay information." <u>Gates</u>, 462 U.S. at 238. Here, it
is not clear whether the witnesses were victims, unquestionably
honest citizens, informants, or participants in any criminal
activity; what information any "witnesses" provided; or what the
witnesses might have seen. It is not clear whether the witnesses
purportedly made consistent statements. <u>See</u> <u>United States v.</u>
<u>Mayle</u>, 382 F. App'x 329, 330, 332 (4th Cir. 2010) (suggesting
that multiple anonymous tips reporting the same thing lends
credibility). Nor is there any basis upon which the magistrate,
or a law enforcement officer, could determine the veracity or
basis of knowledge of any "witnesses" described in the
affidavit. And more fundamentally, even if the credibility of
the witnesses is assumed to be unassailable for purposes of

evaluating the warrant, there is nothing in the warrant to
explain what those witnesses saw.

### C. __Defendant's Presence at Firewater__

This court agrees with the Government that the affidavit
reflects the fact that the "witnesses" stated that Defendant was
present and that fact was confirmed by Defendant's own
statement, corroborating Defendant's presence at the scene of
the shooting. (Mot. to Suppress, Ex. A, Search Warrant (Doc.
14-1) at 7.) Defendant's presence was further confirmed by the
fact that Defendant's vehicle was "shot into during the shooting
at Firewater." (Id.) Defendant's "presence" is no more
indicative of culpability than that of any of the "witnesses"
who were present. Additionally, the Detectives' verification
that the vehicle was "shot into" does not provide any fact to
suggest Defendant engaged in any criminal activity and simply
corroborates Defendant's presence. Even if that fact is
suggestive of some activity by Defendant or that Defendant may
have been a victim by virtue of the shot into the vehicle, it
does not suggest any evidence of criminal activity might be
found in Defendant's home. Instead, assuming evidence of
criminal activity might be found anywhere, it was limited to the
vehicle itself as a result of a bullet "into" the car.
"[R]esidential searches have been upheld only where some

information links the criminal activity to the defendant's residence." United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993).

**D.    "Threats"**

While the information as to multiple witnesses identifying Defendant as a "suspect" is conclusory and provides no factual basis upon which to conclude probable cause is present, the information about a threat is a much closer issue under the good-faith exception question of whether an executing officer had reasonable grounds to rely upon the warrant. The warrant itself states:

> While still at Holtzclaw's residence, 1508 Lakewood Dr., Holtzclaw stated that people were making threats to him on social media. When Salisbury Police Detectives asked him where his phone was Holtzclaw stated that he had two phones. When Detectives asked him where the phones were Holtzclaw said the phone he uses on social media was broke he then retracted this statement and said he lost it on the west side he then stated it might be at Firewater.[2]

---

[2] The Government further contends that Defendant's inconsistent statements regarding the location of his phone support a finding of good faith reliance on the warrant. (Government's Resp. (Doc. 17) at 11.) While shifting stories may raise a reasonable officer's generalized suspicion as to Defendant, because there is inadequate evidence before the court connecting Defendant to a crime, this court is not persuaded that a reasonable officer would rely on such generalized suspicion absent further information.

(Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 7-8.)

Even if the information in the affidavit is not sufficient to

provide probable cause to believe Defendant was a participant in

the shooting, as a suspect, the fact of "threats on social

media" could be interpreted to suggest those threats might be

relevant to some criminal activity. However, the affidavit does

not provide any facts to link the threats to evidence of the

murder or any other criminal activity because there is no

description of the nature or content of any threats.

Nevertheless, as noted above, in making a determination as

to the good-faith exception under Leon, it is appropriate to

look outside an affidavit in determining whether the officer's

reliance was objectively reasonable. Leon notes that the good-

faith exception is determined "in light of all the

circumstances." McKenzie-Gude, 671 F.3d at 459; cf. Bynum, 293

F.3d at 197-98. In McKenzie-Gude, the Fourth Circuit held "that

Leon presents no barrier to holding that the experienced

officers in this case, who swore out the affidavit and executed

the search, acted with the requisite objective reasonableness

when relying upon uncontroverted facts known to them but

inadvertently not presented to the magistrate." McKenzie-Gude,

671 F.3d at 460. The court further stated that "we do not

believe that a court abandons the objective inquiry required by

*Leon* when it considers the uncontroverted <u>facts known</u> to the officer, which he has inadvertently failed to disclose to the magistrate." <u>Id.</u> In <u>McKenzie-Gude</u>, the district court "received as exhibits the police incident report describing the police investigation of McKenzie-Gude and Ms. Yevsukov's July 27, 2008 letter." <u>Id.</u> at 457. The Fourth Circuit concluded that these facts – the documents in the record containing the undisputed, relevant facts known to the officers prior to the search – "sufficed to establish objectively reasonable reliance on the warrant." <u>Id.</u> at 461.

The Government, the party with the burden of establishing good faith under <u>Leon</u>, has not presented evidence in this case. Neither party has presented any evidence to permit a finding as to the specific information provided by Defendant at his home regarding any threats on social media as alleged in the affidavit. However, at the May 24, 2018 hearing, Defendant introduced a video and audio recording of Defendant's interview by law enforcement as well as that of Sherika Pate ("Pate").[3] (Mem. Op. & Order (Doc. 21) at 10 n.3.) A review of the interview of Defendant by this court suggests investigators'

---

[3] The timing of these interviews suggests they were conducted beginning around 8:30 and before the warrant was issued at 10:00.

suspicion of Defendant's communications relating to the shooting could reasonably have been heightened during this time, but otherwise the interview does not corroborate or explain any "threats on social media." Instead, Defendant in the interview appears to describe the fact that he had been communicating with a former girlfriend by telephone and at one point an unknown male took her phone and asked Defendant why he "shot my bro." Defendant also filed as an exhibit a report of a law enforcement officer, which reflected that Defendant said that "an unknown male" stated to Defendant that he "shot my bro," (Mot. to Suppress, Ex. B, Case Suppl. Report (Doc. 14-2) at 2), which is consistent with Defendant's statements in the interview.

In accordance with McKenzie-Gude, this court must consider the "uncontroverted facts known to the officer, which he has inadvertently failed to disclose to the magistrate." 671 F.3d at 460. This endeavor is complicated in this case for several reasons.

First, no evidence has been presented as to any additional and specific facts known to the officers in relation to any "threats made to [Defendant] on social media." It is not known whether facts available to the officers, and provided by Defendant, would explain why those threats were relevant to any criminal investigation.

Second, after review of all of the evidence presented, including the affidavit, the videotaped interview of Defendant, the audio of Pate's interview, and the memorandum of interview, those additional facts do not further explain the social media threats described in the affidavit, nor does this evidence establish what additional facts the officers might have known and relied upon in relation to the affidavit. With respect to the unknown caller's statement to Defendant, characterized as a threat, Defendant did describe that statement during a face-to-face encounter with law enforcement during the videotaped interview, and, as a result, those facts may have been something an objectively reasonable officer might have known.

However, this court is not able, on this record, to find the interview information obtained from either Defendant or Pate constitutes "uncontroverted facts known to [the officers who swore out the warrant and executed the search] but inadvertently not presented to the magistrate." McKenzie-Gude, 671 F.3d at 460. First, it is not clear that the "executing officers" were aware of or ever considered information gleaned during the interviews. The affidavit submitted in support of the search warrant application concludes with the statement that Defendant "then left willingly with Salisbury Police Detectives to be driven to the Salisbury Police Department to give a statement."

(Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 8.) As a result, the affidavit is clearly written to include information obtained during a discrete period of time, from the shooting until Defendant was driven to the police department. No evidence has been presented to clarify or explain any additional facts obtained by the officers who swore out the affidavit and executed the search during that time which might support a finding of good faith under <u>Leon</u>.

The evidence introduced by Defendant of the interviews of Defendant and Pate arises during the time after Defendant and Pate were taken to the police station. The interviews are conducted from 8:30 until after 10:00, the time the warrant was issued. Although the content of the interviews suggests reasons why law enforcement would be interested in Defendant's communications, at least by telephone, this court is unable to determine what information may be relevant to the <u>Leon</u> analysis as uncontroverted facts known to the officers but inadvertently not presented to the magistrate. <u>See</u> <u>McKenzie-</u>Gude, 671 F.3d at 460. No evidence has been presented that the executing officer participated in the interviews, was aware of any facts obtained during the interviews, or relied upon those facts in any way. The burden of proof is on the Government, not this court, to demonstrate application of the good-faith doctrine.

Furthermore, the statement Defendant described during his interview was made over the telephone of Pate, according to Defendant, and no evidence is presented to explain how that statement might support a threat on social media or, more significantly, why the cell phone might have revealed any relevant information as to the threat on social media. The affiant's experience as contained in the affidavit fails to list any experience with social media or cell phones, (Mot. to Suppress, Ex. A, Search Warrant (Doc. 14-1) at 6), and nothing in the warrant explains what evidence might be found within the cell phones or media devices. Additionally, there is nothing to suggest that threats made to Defendant "on social media" would be stored on "cell phones" or that said phones might be found in the house. While it is reasonable to infer that the nature of some items suggests the item might be found in the home, see Doyle, 650 F.3d at 471, a phone is notably different, and at least one court has persuasively explained why such an inference would not apply to a cell phone, see United States v. Griffith, 867 F.3d 1265, 1273-74 (D.C. Cir. 2017).

This court concludes that, to the extent law enforcement officers had additional information relating to the issue of probable cause or further explaining any threats over social media, the record here does not permit this court to determine

what facts or information that may have been. Because the Government bears the burden of proof as to an officer's objectively reasonable reliance upon the warrant, this court is unable to find that the Government has met its burden and the good-faith exception applies in this case.

A "bare bones" affidavit is "one that contains 'wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause.'" DeQuasie, 373 F.3d at 521 (quoting United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996)). If the conclusory words and phrases are removed from this affidavit – witnesses, suspect, threats – the affidavit contains facts which establish that Defendant was present at Firewater when the shooting took place, Detectives verified that Defendant's car was shot into during the shooting, and Defendant gave inconsistent statements as to the location of his second phone. These facts fall far short of establishing probable cause to search Defendant's home, and an objective law enforcement officer would not have reasonably relied on such a deficient warrant. See Andrews, 577 F.3d at 236 n.1; see also Doyle, 650 F.3d at 470. "[W]here a reasonable officer would know that a probable cause determination could not be rendered without information conspicuously absent from his application for a warrant,

reliance on the resulting warrant is not objectively

reasonable." Doyle, 650 F.3d at 476.

As explained in Leon and recognized in McKenzie-Gude,

> It is the magistrate's responsibility to determine
> whether the officer's allegations establish probable
> cause and, if so, to issue a warrant comporting in
> form with the requirements of the Fourth Amendment. In
> the ordinary case, an officer cannot be expected to
> question the magistrate's probable-cause determination
> or his judgment that the form of the warrant is
> technically sufficient. Once the warrant issues, there
> is literally nothing more the policeman can do in
> seeking to comply with the law. Penalizing the officer
> for the magistrate's error, rather than his own,
> cannot logically contribute to the deterrence of
> Fourth Amendment violations.

Leon, 468 U.S. at 921 (citation and footnote omitted); see also

McKenzie-Gude, 671 F.3d at 461. After review of the interviews,

it appears to this court that the officers involved in this case

were earnest in their efforts to investigate or, alternatively,

allay their suspicions as to Defendant. It may very well be that

other information, not presented in this case, might cause this

court to reach a different result. Nevertheless, the paucity of

factual information and striking conclusions contained in the

warrant and this court's inability to determine what facts may

have been available to and relied upon by the officers who swore

out the affidavit and executed the search preclude the

application of the good-faith exception. The search of an

individual's home cannot be based on a general allegation of

suspicion without facts to support or explain how that suspicion amounts to probable cause to believe that the individual was engaged in criminal activity and that evidence thereof will be found in the individual's home.

## III.  <u>CONCLUSION</u>

For the reasons outlined herein,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress, (Doc. 14), is **GRANTED** and evidenced seized as a result of the search is hereby **SUPPRESSED**.

This the 26th day of June, 2018.

_____
                    United States District Judge